**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

ELAINE SAMUELS, on behalf of her son, R.J., a minor,

Plaintiff,

v.

INDEPENDENT SCHOOL DISTRICT 279, CITY OF BROOKLYN PARK, LORENZO BRONSON and W. BARRITT,

Defendants.

Civil No. 02-474 (JRT/SRN)

**ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

---

Eric Hageman and Andrew Noel, FLYNN, GASKINS & BENNETT, L.L.P., 333 South Seventh Street, Suite 2900, Minneapolis, MN 55402, for plaintiff.

Terri L. Hommerding, CANDLIN & HECK, Lawson Commons, 380 St. Peter Street, Suite 603, St. Paul, MN 55102, for defendants Independent School District 279 and Lorenzo Bronson.

Paul D. Reuvers and Jason J. Kuboushek, IVERSON REUVERS, LLC, 230 Townline Plaza, 8585 West 78th Street, Bloomington, MN 55438, for defendants City of Brooklyn Park and William Barritt.

Plaintiff's son, R.J., a ninth grade student at North View Junior High School in Brooklyn Park, Minnesota, became involved in a dispute with another student in class and his teacher issued a distress call. Defendant Lorenzo Bronson, whose duties as an

FILED DEC 8 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.
DEPUTY CLERK

Administrative Assistant included handling discipline referrals at the school, responded to the call and escorted R.J. from the classroom to the office of defendant Officer William Barritt, the school liaison officer. Bronson requested that Barritt handcuff R.J. Barritt did so, and then removed the handcuffs after approximately 30-40 seconds. Plaintiff alleges that this brief detention violated R.J.'s Fourth Amendment rights and brings this action pursuant to 28 U.S.C. § 1983 and state tort law. Defendants each move for summary judgment. For the reasons discussed below, defendants Independent School District 279's ("ISD-279") and Lorenzo Bronson's motion is denied and defendants City of Brooklyn Park's ("Brooklyn Park") and William Barritt's motion is granted.

## BACKGROUND

R.J's teacher, Darrell Maloney, testified in his deposition that he called for assistance because he believed that the two students involved were about to start a physical fight and were at risk, although he did not feel that his own safety was in danger. When Bronson arrived at the classroom, R.J. was still standing, breathing heavily and visibly agitated, but did not indicate that he wanted to fight or continue the argument. Maloney told Bronson that R.J. and the other student had been arguing loudly, had gotten to their feet, and appeared to have been about to fight. R.J. left the classroom with Bronson and accompanied him to Barritt's office.

When they reached Barritt's office, R.J. was still angry, upset, and tense, but not physically or verbally aggressive. Barritt and Bronson testified that Bronson told Barritt that there had been an altercation. They also testified that immediately after Bronson and

R.J. reached Barritt's office there was a commotion in the hallway. Bronson told Barritt to handcuff R.J. and then left briefly to investigate the commotion. R.J. denies that Bronson told Barritt about the classroom altercation and does not recall any commotion in the hallway. Bronson claims that he asked Barritt to handcuff R.J. because R.J. was visibly upset and the commotion in the hallway caused him to worry that the other student involved in the altercation might be coming in. According to Barritt, based on Bronson's statement that there had been an altercation, R.J.'s demeanor, and the situation in the hallway, he independently decided to handcuff R.J. because he considered R.J.'s behavior indicative of a person "who did something wrong" or is about to "go off."

Bronson testified that he wanted to have R.J. handcuffed in order to teach him a lesson about the possible consequences of getting into fights at school. He apparently took R.J. to Barritt's office for this purpose, although Bronson asserts that the commotion in the hallway and the possibility that the other student might be coming to the office provided additional motivation for asking Barritt to handcuff the student. Bronson and Barritt agree that once Barritt realized that Bronson's intention regarding the handcuffs was to teach R.J. a lesson, he removed the handcuffs and subsequently told Bronson that he could not handcuff students for that purpose.

Plaintiff's claim under § 1983 alleges False Arrest and Detention in violation of the Fourth Amendment. Her state tort law claim alleges False Imprisonment.[1]

---

[1] During the hearing on this motion, plaintiff clarified that she did not intend to allege a Fourteenth Amendment due process claim, withdrew her § 1983 claims against defendants ISD-279 and Brooklyn Park, and withdrew her claims of assault and battery and intentional infliction of emotional distress against all defendants.

Defendants ISD-279 and Lorenzo Bronson move for summary judgment based on qualified immunity with respect to the § 1983 claim and official immunity with respect to the false imprisonment claim. ISD-279 states that its liability is premised on the doctrine of respondeat superior, and that if Bronson is protected, then it is also protected. Defendants Brooklyn Park and Barritt also move for summary judgment based on qualified immunity with respect to the § 1983 claim and official immunity on the false imprisonment claim. Brooklyn Park similarly states that its liability is premised on the doctrine of respondeat superior, and if Barritt is entitled to protection, then it is as well.

## ANALYSIS

### I. Standard of Review

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material when its resolution affects the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The

nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

## II. Qualified Immunity

Public school officials are state officials for qualified immunity purposes, and therefore may assert a qualified immunity defense. *Wood v. Strickland*, 420 U.S. 308, 321 (1975). In determining whether a state official is entitled to qualified immunity, the Court's first inquiry is whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate violation of a federal constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). If they do not, then summary judgment in favor of the defendant is appropriate. If the plaintiff's allegations show such a violation, then the Court must inquire whether the right was clearly established, "in light of the specific context of the case." *Id.* at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [or official] that his conduct was unlawful in the situation he confronted." *Id.* "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular [official] conduct." *Id.* at 205. In other words, "if the law did not put [the

defendant] on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* at 202.

**A. Violation of the Fourth Amendment**

Plaintiff alleges that Bronson and Barritt violated R.J.'s Fourth Amendment right to be free from unreasonable seizure by either detaining or *de facto* arresting him without reasonable justification and solely for the purpose of teaching R.J. a lesson.[2] The Fourth Amendment's prohibition against unreasonable searches and seizures applies to school officials. *Vernonia Sch. Dist. v. Acton*, 515 U.S. 646, 655 (1995); *New Jersey v. T.L.O.*, 469 U.S. 325, 333 (1985). To establish a seizure in violation of the Fourth Amendment, a plaintiff must prove that (1) his or her person was seized; and (2) the seizure was unreasonable. *Katz v. United States*, 389 U.S. 347 (1967).

**1. Seizure**

A seizure in the constitutional sense occurs when a government actor has in some way restrained the liberty of a person to a degree that a reasonable person would not feel free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (plurality); *United States v. Favela*, 247 F.3d 838, 840 (8th Cir. 2001). R.J. was taken into a police officer's office by a school administrative assistant in charge of discipline and, behind a closed

[2] Plaintiff and defendants disagree as to whether R.J. was *de facto* arrested or merely detained. Defendants assert, as an initial matter, that if R.J. was not arrested, there can be no claim for violation of the Fourth Amendment by false arrest. Plaintiff claims that R.J. was *de facto* arrested. The Court does not reach this issue as the 4th Amendment's protection and reasonableness requirement is triggered by seizures not amounting to full blown arrest. *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975).

door, was handcuffed. During this incident, R.J. was not free to leave the office. The Court finds that Bronson and Barritt seized R.J. for purposes of the Fourth Amendment.[3]

### 2. Reasonableness

Defendants argue that even if R.J. was seized for purposes of the Fourth Amendment, his seizure was reasonable under the circumstances. The Supreme Court has recognized that the Fourth Amendment reasonableness standard operates differently in the public school context than in the law enforcement context, specifically noting that "the preservation of order and a proper educational environment requires close supervision of schoolchildren, as well as the enforcement of rules against conduct that would be perfectly permissible if undertaken by an adult." *T.L.O.*, 469 U.S. at 339. In the public school context, the reasonableness inquiry must take into account the school's "custodial and tutelary responsibility for children," *Vernonia*, 515 U.S. at 656. Reasonableness is thus determined by balancing the student's Fourth Amendment interests such as the need to guard against arbitrary invasions of a student's privacy and security, against legitimate government interests. *Id.* at 656-57. The Court also considers the nature of the intrusion in the reasonableness inquiry. *Id.*

---

[3] Bronson also asserts that if handcuffing R.J. is considered a detention subject to Fourth Amendment protection, he cannot be liable since he has no authority to handcuff and did not do the actual handcuffing. This argument fails because it is sufficient that he caused Barritt to handcuff R.J. The requisite causal connection between a state actor's conduct and the constitutional deprivation can be established "not only by some kind of direct personal participation in the deprivation but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Waddell v. Forney*, 108 F.3d 889, 894 (8th Cir. 1997).

In *T.L.O.*, the Supreme Court determined that a search of a student by a school official is reasonable if it is (1) "justified at its inception" and (2) "was reasonably related in scope to the circumstances which justified the interference in the first place." *T.L.O.*, 469 U.S. at 341 (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)). This relaxed Fourth Amendment standard has long-been applied in cases involving school searches. *See, e.g., Cason v. Cook*, 810 F.2d 188 (8th Cir. 1987). Four circuits and at least two district courts have extended its application to school seizure cases. *See, e.g., Doe v. State of Hawaii Dep't of Educ.*, 334 F.3d 906 (9th Cir. 2003); *Hassan v. Lubbock Indep. Sch. Dist.*, 55 F.3d 1075 (5th Cir. 1995); *Wallace v. Batavia Sch. Dist.*, 68 F.3d 1010 (7th Cir. 1995); *Edwards v. Rees*, 883 F.2d 882, 884 (10th Cir. 1989); *Valentino C. v. School Dist. of Philadelphia*, 2003 WL 177210 (E.D. Penn. 2003); *Bisignano v. Harrison Central Sch. Dist.*, 113 F. Supp. 591 (S.D.N.Y. 2000); *Rasmus v. Arizona*, 939 F. Supp. 709 (D. Ariz. 1996). This Court agrees that the same considerations that led the Supreme Court to apply a relaxed Fourth Amendment standard in cases involving school searches support applying the same standard in school seizure cases and will apply the standard enunciated in *T.L.O.*[4]

Schools have a well-recognized, strong interest in maintaining an orderly environment suitable for education, protecting the safety of students and staff, and deterring possibly violent misconduct in the future. *See Vernonia*, 515 U.S. at 660-63;

---

[4] The Eighth Circuit applied the *T.L.O.* standard to searches conducted by law enforcement officials in conjunction with and at the request or direction of school officials. *See Shade v. City of Farmington*, 309 F.3d 1054 (8th Cir. 2002); *Cason v. Cook*, 810 F.2d 188 (8th Cir. 1987). The Court will therefore apply the same standard to both Bronson and Officer Barritt.

*T.L.O.*, 469 U.S. 339-40; *Shade v. City of Farmington*, 309 F.3d 1054 (8th Cir. 2002); *Milligan v. City of Slidell*, 226 F.3d 652, 655 (5th Cir. 2000). Like any other student in a public school, R.J.'s privacy and liberty interests are reduced, but not eliminated. *Vernonia*, 515 U.S. at 655. Schools regularly remove students from classrooms for disciplinary reasons. *See Milligan,* 226 F.3d at 655 ("[I]t is not at all clear that [students] have some privacy right not to be summoned to and detained in a school official's office for questioning on matters of school discipline.") Indeed, plaintiff does not seem to challenge Bronson's right to remove R.J. from class or to take R.J. either to Bronson's own office or to Barritt's office for disciplinary purposes. Plaintiff does, however, challenge Bronson's request for and Barritt's application of the handcuffs. It is with respect to this aspect of the detention that the *T.L.O.* test is most appropriately applied. The Court will examine separately the circumstances involving each of the defendants.

The facts, viewed in the light most favorable to plaintiff, indicate that Bronson was called to R.J.'s classroom because R.J. and another student were engaged in a loud verbal, but not physical, altercation that caused the teacher to fear for the safety of the other students in the room. Bronson told R.J. to leave the classroom and escorted him to Barritt's office. R.J. was visibly tense and angry, but not verbally or physically aggressive. Bronson requested that Barritt handcuff R.J. in order to teach him a lesson about the consequences of fighting at school. School teachers and administrators are often put in a position of trying to teach students lessons about what constitutes appropriate behavior and the consequences of inappropriate behavior. *See Vernonia*, 515 U.S. at 655 ("[The Supreme Court has] acknowledged that for many purposes school

authorities act . . . with the power and indeed the duty to inculcate and manners of civility."); *Milligan*, 226 F.3d at 655. Teachers and administrators properly engage in behavior in the school setting with students that might be considered inappropriate with adults. *Vernonia*, 515 U.S. at 655 (citing *T.L.O.*). Bronson rightly believed his job to include teaching students like R.J. the consequences of fighting or otherwise misbehaving at school.

However, when viewed in the light most favorable to plaintiff, the Court finds that R.J.'s reported misbehavior did not rise to a level so as to justify handcuffing him. R.J. and the other student reportedly were loud, upset and close to fighting, but did not actually come to physical confrontation. R.J. was tense and angry when Bronson removed him from the classroom and while in Barritt's office, but was not physically or verbally aggressive. While the circumstances may have justified disciplinary action of some sort, and it may have been appropriate to explain to R.J. what would happen if he were to be arrested, a jury reasonably could find that applying handcuffs to R.J. as part of a lesson on the consequences of misbehaving was not reasonably related in scope to the circumstances under which the detention arose. The Court thus finds that, for purposes of summary judgment, Bronson violated R.J.'s Fourth Amendment right to be free from unreasonable seizure.

Barritt is in a different position. He handcuffed R.J. in response to Bronson's direct request that he do so. Barritt testified that although he regularly works with the administrative assistants on discipline matters, it is rare for the administrative assistants to bring students to his office. He further testified that as the only police officer in the

school, he works with the administrative assistants as he would with a partner. He also testified that the school frequently had instances of violence, and that he believed that Bronson would not bring a student to his office unexpectedly and request that he be handcuffed unless there were a problem. Based on his relationship with Bronson, his assessment of the situation and his observation of R.J.'s demeanor, Barritt decided to handcuff R.J. while he investigated and controlled the situation. The Court finds that these circumstances were sufficient to justify Barritt's application of the handcuffs. The fact that Barritt immediately removed the handcuffs upon discovering that there was no call for them, after 30-40 seconds, indicates that Barritt's actions were reasonably related in scope to the situation. The Court therefore finds that Barritt did not violate R.J.'s Fourth Amendment right to be free from unreasonable seizure. In light of this finding, the Court will grant Barritt's summary judgment motion on plaintiff's fourth amendment unreasonable detention claim.

### B. Reasonable Under Clearly Established Law

In examining a claim of qualified immunity, a court must first determine whether the facts allege the violation of a clearly established constitutional right. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991). The court then inquires whether the defendant's conduct was objectively reasonable in light of the legal rules clearly established at the time of the incident in issue. *Id.* Thus, even if the Court were to find that Bronson's or Barritt's conduct violated R.J.'s Fourth Amendment rights, each could nevertheless be

immune from liability if reasonable public officials could differ on the lawfulness of their actions. *Hassan*, 55 F.3d at 1079.

At the time of the incident in question, it was well-established that the Fourth Amendment right to be free from unreasonable seizure extended, albeit in a relaxed manner, "to seizures by or at the direction of school officials." *Hassan*, 55 F.3d at 1079; *T.L.O.*, 469 U.S. at 341-42. Additionally, it has long been established that any seizure must be reasonable under all the circumstances. *Terry v. Ohio*, 392 U.S. 1, 20-21 (1968).

The Court determined previously that Bronson's actions violated R.J.'s Fourth Amendment right against unreasonable seizure. Under the facts alleged here, the court finds that a reasonable official in Bronson's position should have known that the use of handcuffs in response to R.J's actions would violate well-known constitutional principles. Indeed, Barritt's immediate removal of the handcuffs and quick explanation to Bronson that lessons could not be taught with handcuffs support this conclusion. Accordingly, Bronson is not entitled to immunity from the § 1983 claim, and summary judgment will not be granted in his favor on this claim.

It was also well established that police officers are regularly called on to make quick decisions, which may properly include a brief detention, in order to assess and control the situation in which they find themselves. *See Michigan v. Long*, 463 U.S. 1032, 1051 (1983) (quoting *Terry*, 392 U.S. at 28.). This is what Barritt did in this case. Thus, even if Barritt's brief detention of R.J. had been unreasonable and thus unlawful, it would nevertheless be protected by qualified immunity because a reasonable officer could have believed that his actions were lawful under the circumstances.

## III. Official Immunity

### A. False Imprisonment

The tort of false imprisonment protects the personal interest in freedom from restraint of movement. *Lundeen v. Renteria*, 224 N.W.2d 132, 135 (Minn. 1974). Generally, the tort of false imprisonment requires (1) words or acts intended to confine, (2) actual confinement, and (3) awareness by the plaintiff that he is confined. *Blaz v. Molin Concrete Products Co.*, 244 N.W.2d 277, 279 (Minn. 1976). In the context of a seizure, the essential elements of a claim are (1) a seizure performed by defendant, and (2) the unlawfulness of that seizure. *Lundeen*, 224 N.W.2d at 135. If the seizure is unlawful, it constitutes false imprisonment. *Id.*

The Court determined that R.J. was seized, but that Barritt's detention of R.J. was reasonable, and therefore lawful. Barritt is therefore entitled to summary judgment on plaintiff's claim of false imprisonment.

In light of the Court's determination that a reasonable jury could find that Bronson's detention of R.J. was not reasonable for purposes of the § 1983 claim, the Court similarly finds that a reasonable jury could find the detention unreasonable, and therefore unlawful, for state law purposes.

### B. Official Immunity

Under the state common law doctrine of official immunity, public officials whose duties call for the exercise of discretion are protected from liability based on the exercise of that discretion unless the official is guilty of a willful or malicious wrong. *Pletan v.*

*Gaines*, 494 N.W.2d 38, 40 (Minn. 1992). "Malice" or bad faith, which will strip an individual of official immunity, means intentionally doing a wrongful act without legal justification or excuse, or a willful violation of a known right. *Davis v. Hennepin County*, 559 N.W.2d 117, 123 (Minn. Ct. App. 1997). For the purposes of determining whether official immunity applies to protect a governmental employee, the question of malice or willfulness is an objective inquiry into the legal reasonableness of an official's actions. *Id.* (citing *State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 571 (Minn. 1994)). "An official's actions are legally unreasonable if the official commits those acts while having reason to believe they are prohibited." *Id.* Plaintiff must present "specific facts evidencing bad faith" rather than "bare allegations of malice." *Reuter v. City of New Hope*, 499 N.W.2d 745, 751 (Minn. Ct. App. 1990) (relying on *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).

The parties agree that both Bronson and Barritt qualify as discretionary officials. Plaintiff claims that Bronson and Barritt, in handcuffing and detaining R.J., acted maliciously and are thus not entitled to official immunity. If either Bronson or Barritt had reason to believe that their actions would be unlawful, then the official is not protected by official immunity.

The Court determined above that even if Barritt's seizure of R.J. had been unreasonable, it is nevertheless protected by qualified immunity because a reasonable officer could have believed Barritt's actions to be unlawful. Plaintiff has not presented any concrete facts to the contrary. This precludes a finding of malice, and Barritt is therefore entitled to official immunity as to plaintiff's claims of false imprisonment.

The Court also determined, however, that a reasonable jury could find Bronson's actions unlawful, and that Bronson should have know that requesting that handcuffs be applied to a student under these circumstances was not lawful. Thus, Bronson is not entitled to official immunity with respect to plaintiff's claim of false imprisonment.

## IV. Respondeat Superior and Vicarious Immunity

Under the doctrine of respondeat superior, an employer is liable for tortious conduct of its employees. *Fahrendorff ex rel. Fahrendorff v. North Homes, Inc* , 597 N.W.2d 905, 910 (Minn. 1999). Conversely, if the conduct of an employee is protected by official immunity, the employer is also vicariously immune from liability. *Terwilliger v. Hennepin County*, 561 N.W.2d 909, 913 (Minn. 1997).

As Barritt is entitled to summary judgment and official immunity with respect to plaintiff's false imprisonment claim, defendant Brooklyn Park is also entitled to such protection. However, since the Court has found that Bronson will not be granted official immunity with respect to the false imprisonment claim, neither will defendant ISD-279.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants William Barritt and the City of Brooklyn Park's Motion for Summary Judgment [Docket No. 14] is **GRANTED.** All claims against Defendants William Barritt and the City of Brooklyn Park are **DISMISSED with prejudice**.

2. Defendants Lorenzo Bronson and Independent School District 279's Motion for Summary Judgment [Docket No. 21] is **DENIED**.

DATED: December 8, 2003
at Minneapolis, Minnesota.

John R. Tunheim

JOHN R. TUNHEIM
United States District Judge

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*